IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FATIMA ALI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:14-cv-1143 |
| v. ) | |
| ) | |
| CITY OF FAIRFAX, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

In this removed, diversity personal injury action, the parties have filed cross-motions for summary judgment, raising the following questions:

(1) Whether Fairfax City's operation of its subsidized municipal bus system for the benefit of its citizens is a governmental function, entitling the City to sovereign immunity from tort claims arising from the City's operation of its bus system.

(2) If Fairfax City is entitled to sovereign immunity for tort claims, whether a Fairfax City bus driver is also entitled to immunity from claims of ordinary negligence (but not gross negligence) arising from the performance of his duties as a bus driver in transporting passengers on his assigned bus route.

(3) Whether the plaintiff has adduced admissible evidence in the summary judgment record that would permit a reasonable jury to find that the bus driver was liable, not for ordinary negligence, but for gross negligence.

For the reasons that follow, these questions must be answered in the affirmative.

I.

This case arises out of an incident that occurred on August 31, 2012 in Fairfax City, Virginia. Plaintiff, Fatima Ali, visited the Fairfax County courthouse on August 31, and after concluding her visit, sought public transportation to find her way to Alexandria. To this end, plaintiff boarded City-University Energysaver ("CUE") Bus # 829 in order to reach a bus stop on

1

Main Street so that she could then transfer to a different bus that would transport plaintiff to her desired destination. The CUE Bus System provides regularly scheduled, low-cost transportation services within Fairfax City to and from the George Mason University ("GMU") Fairfax campus and to and from the Vienna/Fairfax-GMU Metrorail Station, with buses running seven days a week. Fairfax City owns and operates the Bus System, which was implemented to create affordable public transportation as part of a region-wide transportation plan. The Bus System derives its funding, in part, from the Commonwealth of Virginia and GMU, a state institution. Defendant Robert Cowden was the bus driver of the CUE Bus # 829, which was traversing Green Route 1 on August 31. Green Route 1 operates in a clockwise pattern starting from the GMU Campus.

Once on board the CUE Bus # 829, plaintiff sat down and then realized that the bus was proceeding in the wrong direction for her to reach the Main Street bus stop. Plaintiff then stood up and approached Cowden to query how she could reach her destination. In response, Cowden asked plaintiff to be seated until the bus ceased moving. When the bus stopped at a traffic light, Cowden then inquired into the nature of plaintiff's problem. Plaintiff told Cowden that she needed to reach the Main Street bus stop so that she could ultimately find her way to Alexandria. In response, Cowden informed plaintiff that she had two options: (i) she could either stay on the bus for another 45 minutes, during which time the bus would reach the endpoint of the route and turn back around before dropping plaintiff off at the Main Street bus stop, or (ii) alternatively, plaintiff could exit the bus at the next scheduled stop. Plaintiff elected the latter, and returned to her seat before pulling the bus cord to remind Cowden to stop. Cowden complied with plaintiff's request and stopped the bus in order to allow plaintiff to disembark. When plaintiff moved to the front of the bus to exit, Cowden showed plaintiff that the Main Street bus stop was

across the street. Plaintiff then attempted to exit the bus holding her purse on her left side. As she took her first step off the bus, the bus door closed on her left arm. Plaintiff attempted to catch Cowden's attention so that he could release plaintiff's arm, but Cowden had already turned away from plaintiff at this point and was looking in the left-hand mirror for a break in traffic. Accordingly, he did not check and see whether plaintiff successfully exited the bus. Plaintiff's initial attempts to extricate herself from the door were therefore unsuccessful. After seeing a break in traffic, Cowden turned the bus wheel and the CUE Bus #829 began moving with plaintiff's arm still caught in the bus door. A passenger then noticed that plaintiff's arm was caught in the bus door and called out for Cowden to stop the bus, which he did promptly and caused the bus door to release plaintiff's arm.

It is undisputed in this case that on August 31, Cowden was negligent, and his negligence was a proximate cause of the incident involving plaintiff, when he took his eyes off plaintiff before she had completed alighting the bus in order to look in his side mirror for oncoming traffic and prematurely closed the bus door. The parties apparently dispute, however, both how fast and how far the bus traveled before Cowden stopped the bus and released plaintiff's arm. Yet, the summary judgment record, carefully parsed, discloses no definitive answer to this question. To be sure, in her complaint, plaintiff initially claimed that her arm was trapped in the bus for two-tenths of a mile while she was forced to run alongside the bus, but this assertion was not repeated in the summary judgment record and is not supported by any record evidence. Plaintiff's counsel also initially contended that plaintiff was dragged the full distance from one bus stop to the next with her arm caught in the bus door. Yet, no competent summary judgment record evidence supports these assertions. Indeed, plaintiff concedes that she does not know how

3

far the bus traveled while her arm was trapped in the bus door. *See* Ali Tr. Vol. II at 45:11-13 ("Q. How far do you claim -- how far do you claim the bus moved? A. I don't know.").

Defendants, by contrast, have proffered record evidence on this issue. Their evidence consists chiefly of a report prepared by their expert witness Thomas Noyes, Director of Sales and Marketing at NextBus, Inc., who was retained to research and review the Automatic Vehicle Location ("AVL") data generated by CUE Bus #829 operating on Green Route 1 between 2:35 p.m. and 3:15 p.m. on August 31. The AVL Hardware on the bus utilized a GPS module to track the bus's movements during the relevant time period. Based on the AVL data, Mr. Noyes concluded that: (i) the CUE Bus #829 did not stop at bus stop #34, the bus stop where plaintiff claimed she boarded the bus; (ii) the CUE Bus #829 stopped at bus stop #129, the bus stop where Cowden stated plaintiff boarded the bus; (iii) the CUE Bus #829 did not stop at bus stop #130, the bus stop at which plaintiff stated she attempted to exit the bus when her arm became caught in the bus door; (iv) the CUE Bus #829 stopped at bus stop #131, the bus stop at which Cowden stated that plaintiff was exiting the bus when her left arm became caught in the front door of the bus; and (v) the CUE Bus #829 remained in the vicinity of bus stop #131 between 2:53 p.m. and 3:08 p.m. before the AVL system next noted movement of the bus along Green Route 1.[1] Based on this data, Mr. Noyes's report concluded that during this 15-minute period, which includes the shorter time in which the incident took place, it was possible that all of the position reports were

---

[1] Importantly, contrary to Rule 56, Fed. R. Civ. P., plaintiff does not dispute Mr. Noyes's findings by citations to admissible record evidence. Instead, plaintiff merely contends that Mr. Noyes's report and declaration are inadmissible under the Federal Rules of Evidence. This contention is meritless, as defendants have attached a declaration from Mr. Noyes and his resume, both of which establish that Mr. Noyes possesses the necessary competence and expertise for him to analyze the relevant AVL data and offer a relevant and reliable opinion. *See Daubert v. Merrell Dow Pharm's, Inc.*, 509 U.S. 579, 589 (1993). Plaintiff thus offers no admissible facts or persuasive reasons to doubt the admissibility of the opinions in Mr. Noyes's report or the accuracy of these opinions.

made without the bus moving, or, with the bus moving, at most, only a "short distance." *See* Part V, *infra*. But Mr. Noyes's report does not include an estimate of this short distance.

Defendants also presented the eyewitness testimony of Jordan Dickerson, a passenger on CUE Bus #829 when the incident took place. Dickerson estimated that the bus traveled "about ten feet" while plaintiff's arm was caught in the bus door for "[b]etween eight to twelve seconds." Dickerson Tr. at 12:10-13. And Dickerson agreed that the bus was "moving slowly" while plaintiff's arm was caught in the bus door, testifying that the maximum speed the bus reached while plaintiff's arm was caught in the bus door was "around ten" miles per hour. *Id.* at 24:3-8.

After plaintiff's arm was released from the bus door, paramedics were dispatched to bus stop # 131 to attend to plaintiff's injuries at the scene and to transport plaintiff to the INOVA Emergency Care Center by ambulance. The emergency room physician examined plaintiff and found a limited range of motion in plaintiff's left shoulder and left elbow, bruising on plaintiff's left forearm and contusions on plaintiff's arm and forearm. Finding it unnecessary to admit plaintiff, the physician discharged plaintiff to go home.

Plaintiff filed this action on August 11, 2014 in the Circuit Court of Fairfax County, Virginia against the City of Fairfax, the CUE Bus Driver—Cowden—the CUE Bus Supervisor, the City of Fairfax Transportation Director, and the City of Fairfax Director of Public Works. Defendants then properly removed this matter to this federal forum on September 5 pursuant to 28 U.S.C. § 1332(a)(1) based on diversity jurisdiction. Defendants then filed a motion to dismiss with respect to the CUE Bus Supervisor, the City of Fairfax Transportation Director, and the City of Fairfax Director of Public Works. Plaintiff did not oppose this motion and defendants' motion to dismiss was thus granted with respect to these defendants, leaving the City of Fairfax

and Cowden as the remaining defendants. At the conclusion of discovery, both parties filed cross-motions for summary judgment. These motions were fully briefed and argued and are thus ripe for disposition.

## II.

The summary judgment standard is too well-settled to merit extended discussion, and the parties do not dispute this standard. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56, Fed. R. Civ. P. It is settled that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On the other hand, a genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, the party opposing summary judgment may not rest upon mere allegations and denials, and must instead "set forth specific facts showing that there is a genuine issue for trial." *Id.* And "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. In other words, to survive summary judgment on an issue, the non-moving party, with the burden of proof on that issue, must submit competent record evidence sufficient to carry the non-moving party's burden on that issue and allow a reasonable jury to find for the non-moving party. *See id.*

## III.

It is well-established that the doctrine of sovereign immunity "protects municipalities from tort liability arising from the exercise of governmental functions." *Niese v. City of*

*Alexandria*, 564 S.E.2d 127, 132 (Va. 2002). More specifically, Virginia law recognizes a distinction between governmental functions and proprietary functions, with sovereign immunity attaching only to the former. *See id.* In the Supreme Court of Virginia's words, a municipality is "immune from liability for negligence associated with the performance of 'governmental' functions, but can be held liable for negligence associated with the performance of 'proprietary' functions." *Id.* And a function is governmental if it is "'directly tied to the health, safety, and welfare of the citizens.'" *Id.* (citing *Edwards v. City of Portsmouth*, 375 S.E.2d 747, 750 (Va. 1989)). In other words, a "'governmental function involves the exercise of an entity's political, discretionary, or legislative authority.'" *Id.* (citing *Carter v. Chesterfield Cnty. Health Comm'n*, 527 S.E.2d 783, 785 (Va. 2000)). By contrast, proprietary functions "are performed primarily for the benefit of the municipality." *City of Chesapeake v. Cunningham*, 604 S.E.2d 420, 426 (Va. 2004). If a function is a "ministerial act and involves no discretion, it is proprietary." *Id.* Importantly, and particularly pertinent here, the Supreme Court of Virginia has "consistently held that when a municipality plans, designs, regulates or provides a service for the common good, it performs a governmental function." *Id.* In contrast, the "routine maintenance or operation of a municipal service is proprietary." *Id.* at 427. Further, the Supreme Court of Virginia has also made clear that where "governmental and proprietary functions coincide, the governmental function is the overriding factor." *Transportation, Inc. v. City of Falls Church*, 254 S.E.2d 62, 64 (Va. 1979) (internal quotation marks and citations omitted).

These principles, applied here, make clear that Fairfax City's operation of the CUE Bus System is a governmental function. As the summary judgment record reflects, the CUE Bus System is owned and operated by Fairfax City and is subsidized and partially funded by the Commonwealth of Virginia and GMU, a state institution. It is undisputed that the CUE Bus

7

System exists to provide free transportation services to George Mason students and employees.[2] Moreover, the CUE Bus System does not operate for profit, but instead provides the aforementioned free services, along with heavily discounted services for senior citizens, adults traveling with children under age 3, and Fairfax County/City school students.[3] As such, defendants are correct that the CUE Bus System operates for the common welfare of Fairfax residents and George Mason students and not for Fairfax City's special benefit or profit. Accordingly, the City's operation of the CUE Bus System is a governmental function.

Pertinent Fourth Circuit authority confirms this result. In *Pavelka v. Carter*, 996 F.2d 645, 648 (4th Cir. 1993), the Fourth Circuit held that Montgomery County was entitled to sovereign immunity in a negligence action arising out of a municipally-operated bus accident. In reaching this result, the Fourth Circuit noted first that resolution of the sovereign immunity question involved interpretation of Maryland law and that under Maryland law, counties have "governmental immunity in negligence actions only when the activity [giving rise to the] suit is . . . a governmental and not a proprietary one." *Id.* Thus, in determining whether an entity is entitled to sovereign immunity, courts applying Maryland law utilize the same governmental/proprietary dichotomy that courts use in applying Virginia law. Further, the Fourth Circuit found that sovereign immunity attached to Montgomery County principally because of the "heavily subsidized nature" of the bus service, as this fact made it clear that the service existed for "the common good of all and not for the special benefit or profit of the County as a corporate body." *Id.* (internal quotation marks and citations omitted). The Fourth

---

[2] *See* Sanford Decl. ¶ 4, ¶ 7.

[3] *See* City of Fairfax, Virginia Adopted Budget Fiscal Year 2014-2015 (Defendants' Memorandum in Support of Their Motion for Summary Judgment, Ex. G).

8

Circuit also noted that public transportation in general "benefits the public health and welfare in a variety of well established ways" and has "no obvious element of private interest." *Id.*

*Pavelka* is persuasive for here, too, Fairfax City's CUE Bus System, like the Montgomery County System, is subsidized by the State and it is also clear that the CUE Bus System, like the Montgomery County System, operates for the benefit of the common good without any element of private interest accruing to Fairfax City. Thus, operation of the CUE Bus System, like the operation of the Montgomery County System in *Pavelka*, is a governmental function, entitling Fairfax City to sovereign immunity.[4]

## IV.

Given that Fairfax City is entitled to sovereign immunity for its operation of the CUE Bus System, the next question is whether Cowden is likewise entitled to immunity. In this respect, it is well-settled that "[u]nder Virginia law, an employee of a sovereign entity is entitled to sovereign immunity only from claims for ordinary negligence, not gross negligence." *Muse v. Schleiden*, 349 F. Supp. 2d 990, 1000 (E.D. Va. 2004). Thus, a "state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected" by sovereign immunity. *James v. Jane*, 282 S.E.2d 864, 869 (Va. 1980). Nor is an employee who "acts beyond the scope of his employment, who exceeds his authority and discretion, and who acts individually" entitled to invoke the shield of sovereign immunity. *Id.* But where, as here, simple negligence is alleged

---

[4] *Smith v. WMATA*, 290 F.3d 201, 206 (4th Cir. 2002) appears to take a contrary position to *Pavelka* but is distinguishable on at least two important grounds. First, *Smith* interpreted and applied District of Columbia law. Second, the opinion's statement that the "provision of mass transportation by a public body . . . is generally recognized as a 'proprietary' function" (i) was mentioned as dicta in a footnote, (ii) was made immediately after the Fourth Circuit acknowledged the difficulty in determining whether a particular function is proprietary and (iii) cited a District of Columbia decision, *Qasim v. WMATA*, 455 A.2d 904, 906 (D.C. 1983) as the source of this proposition. *Id.* n.7.

9

against a defendant who is a City employee, a finding of sovereign immunity precludes liability against that defendant. This distinction is particularly critical in this case, as both parties have already stipulated that Cowden is liable for ordinary negligence.

Virginia courts examine four factors to determine whether a state or municipal employee is entitled to sovereign immunity: (1) the nature of the function performed by the employee; (2) the extent of the state or municipality's interest and involvement in the function; (3) the degree of control and direction exercised by the state or municipality over the employee; and (4) whether the act complained of involved the use of judgment and discretion. *See Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984). The parties do not dispute that the first three factors in this inquiry support a finding of immunity. Here, the function Cowden was performing was governmental in nature, as Cowden was transporting city passengers on a municipal bus when the accident occurred. Nor is there any doubt that Fairfax City is interested and involved in the operation of its CUE Bus System, which was specifically created by the City as a low-cost public transportation system for George Mason students and Fairfax City residents. And it is similarly beyond doubt that Fairfax City exercises substantial control and direction over Cowden in his capacity as a bus driver, as Cowden was required to (i) have a commercial driver's license, (ii) follow specific bus routes and (iii) abide by City rules and directives concerning bus operations. But this does not end the analysis, for in this case, as in most cases, whether a finding of immunity is warranted focuses chiefly and sharply on the fourth factor, namely whether the act complained of involved the use of judgment and discretion.[5]

The "defense of sovereign immunity applies only to acts of judgment and discretion which are necessary to the performance of the governmental function itself." *Heider v. Clemons*,

---

[5] Indeed, plaintiff only contests the fourth factor in this case.

10

400 S.E.2d 190, 191 (Va. 1991). In this respect, Virginia law draws an arguably imprecise distinction between acts necessary to the performance of a governmental function, to which immunity applies, and acts which are deemed "ministerial," to which immunity does not attach. For example, in *Heider*, a sheriff whose vehicle collided with a motorcycle after serving process at a residence was not entitled to immunity because "in ordinary driving situations the duty of due care is a ministerial obligation." *Id.* Yet, in *Stanfield v. Peregoy*, 429 S.E.2d 11, 13 (Va. 1993), the driver of a city truck spreading salt during a snowstorm was immunized from the plaintiff's negligence claim because the "operation of the truck in snow and ice to effectuate a governmental purpose clearly involved, at least in part, the exercise of judgment and discretion by the driver." Likewise, the operation of a CUE bus, like the operation of a city truck spreading salt during a snowstorm, to effectuate a governmental purpose required, in part, judgment and discretion by the CUE bus driver.

This conclusion is confirmed by contrasting two relevant Supreme Court of Virginia cases. In *Wynn v. Gandy*, 197 S.E. 527 (Va. 1938), a school bus driver was driving towards a school building to pick up students when the driver ran over a student pushed by other children in front of the bus. *Id.* at 527-28. The Supreme Court of Virginia found that the bus driver was not entitled to immunity because the act of driving towards the school building was "purely ministerial." *Id.* at 529. By contrast, in *Linhart v. Lawson*, 540 S.E.2d 875 (Va. 2001), a school bus driver collided with a vehicle while students were on board the bus. *Id.* at 876. Under those circumstances, the Supreme Court of Virginia found that the "act complained of, transporting school children, involved discretion and judgment" and thus, the bus driver was entitled to immunity. *Id.* at 878. Thus, the "factual difference between *Wynn* and *Linhart* was that the

11

driver in *Linhart* was actually transporting children at the time of the accident at issue." *Friday-Spivey v. Collier*, 601 S.E.2d 591, 597 (Va. 2004) (Kinser, J., dissenting).

The Supreme Court of Virginia reiterated these principles recently in *Collier*. There, the issue was whether a fire truck driver who was en route to rescue a trapped infant was entitled to immunity from the driver's alleged negligence in colliding with another vehicle. *See Collier*, 601 S.E.2d at 592. The Supreme Court of Virginia held first that the

> [s]pecial skill and training required to operate a fire truck . . . is not the exercise *per se* of judgment and discretion for purposes of sovereign immunity. To find otherwise would not comport with our prior decisions, which have held that sovereign immunity does not extend to "ordinary driving situations."

*Id.* at 594. It then held that the fire truck driver was not entitled to immunity because he was driving in a "nonemergency manner without lights and sirens to a 'public service call' during which he was required to obey all traffic regulations." *Id.* And importantly, the Supreme Court of Virginia rejected the argument that a "controlling factor is whether a governmental employee received specialized training in the operation of a special or heavy duty vehicle . . . ." *Id.* at 595.

Upon examination of the summary judgment record, the facts of this case more closely parallel *Linhart* than *Wynn* or *Collier*. Here, it is undisputed that Cowden was on a regularly-scheduled bus route and was transporting passengers when the incident occurred. Thus, like the bus driver in *Linhart*, Cowden was actually transporting passengers at the time of his negligence, an act which involved "discretion and judgment." *Linhart*, 540 S.E.2d at 878. Both *Wynn* and *Collier* are inapposite. Unlike the bus driver in *Wynn*, Cowden had already commenced the process of transporting passengers, and thus, his complained-of act cannot be deemed "purely ministerial." *Wynn*, 197 S.E. at 529. Similarly, the fire truck driver in *Collier* had not yet begun rescuing the infant when his negligence in that case occurred. *See Collier*, 601 S.E.2d at 594. By contrast, it is undisputed that Cowden's negligence occurred during the performance of his

duties in transporting bus passengers. In sum, Cowden was performing an act requiring judgment and discretion at the time of his negligence and is therefore entitled to immunity from plaintiff's claim of ordinary negligence.

## V.

Although Cowden is entitled to immunity for claims of ordinary negligence in his operation of the bus, this immunity does not extend to liability for claims of gross negligence. Thus, the parties' cross-motions for summary judgment raise the additional question of whether plaintiff has adduced admissible evidence in the summary judgment record such that a reasonable jury could conclude that Cowden was guilty of gross negligence in his operation of the bus.[6]

The definition of gross negligence is well-settled. Specifically, the Supreme Court of Virginia has held that:

> [G]ross negligence is that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of the guest. It must be such a degree of negligence as would shock fair minded persons although something less than willful recklessness.

*Community Motor Bus Co., Inc. v. Windley*, 299 S.E.2d 367, 369 (Va. 1983). A claim of gross negligence is thus one where an actor "disregard[s] prudence to the level that the safety of others is completely neglected." *Wilby v. Gostel*, 578 S.E.2d 796, 801 (Va. 2003). In evaluating whether an act rises to the level of gross negligence, "[d]eliberate conduct is important evidence on the question of gross negligence." *City of Lynchburg v. Brown*, 613 S.E.2d 407, 410 (Va.

---

[6] Defendants argue that plaintiff does not appear to have pled a cause of action for gross negligence in her complaint, but the complaint plausibly alleges facts sufficient to state a claim for gross negligence. Moreover, that defect, if it exists, is easily remedied by amendment. *See* Rule 15, Fed. R. Civ. P. ("The court should freely give leave [to amend] when justice so requires.").

2005) (internal quotation marks and citations omitted). Additionally, whether "certain actions constitute gross negligence is generally a factual matter for resolution by the jury and becomes a question of law only when reasonable people cannot differ." *Koffman v. Garnett*, 574 S.E.2d 258, 260 (Va. 2003).

Given these principles, the question presented is whether the undisputed facts in the summary judgment record are sufficient to allow a reasonable jury to conclude, by a preponderance of the evidence, that Cowden's actions as a City bus driver constituted an "utter disregard of prudence amounting to a complete neglect of the safety" of plaintiff." *Windley*, 299 S.E.2d at 369. If so, summary judgment on plaintiff's gross negligence claim must be denied and the claim must be submitted to a jury. Only if the record facts would not allow a reasonable jury to reach such a conclusion would summary judgment on the gross negligence claim be appropriate. Because the answer to the question presented depends on the record facts, before answering the question, it is important to be clear concerning what is in the summary judgment record and what is not. Not in the summary judgment record is any evidence to support claims asserted in the complaint that plaintiff was dragged by the bus from one bus stop to the next or for two-tenths of a mile.

What is in the summary judgment record is the following: according to plaintiff, after boarding the CUE Bus #829, she realized that the bus was going in the wrong direction for her to disembark at the Main Street bus stop, so she approached Cowden about getting off the bus. *See* Ali Tr. Vol. I at 106: 2-5 ("I went to him, I told him that I need to go to Main Street, and he asked, which Main Street – or which side, I think, which side of Main Street?"). Subsequently, Cowden stopped the bus, and when plaintiff attempted to exit the bus, her arm was caught in the bus door. *See id.* at 110:4-8 ("[H]is bus stopped. The green bus stopped . . . [a]nd when he

dr[o]ve, he closed the door on my arm . . . and [kept] driving."). Importantly, plaintiff was unable to recall either the distance the bus traveled with her arm trapped in the bus door or the duration of time her arm was trapped in the bus door. *See id.* at 136:17-20 ("Q. Well I'm just asking you, how much time [was your arm caught in the bus door]? A. I don't remember. Q. You don't remember? A. No."); Ali Tr. Vol. II at 45:11-13 ("Q. How far do you claim -- how far do you claim the bus moved? A. I don't know.").

For his part, Cowden testified that after he stopped the bus to let plaintiff attempt to disembark, he did not check to see if plaintiff exited the bus because of oncoming traffic. *See* Cowden Tr. at 25:7-10 ("And then I turned away, and I looked in the left-hand mirror for a break in the traffic, because there was a line of cars coming down 123, and I was looking in the mirror."). Cowden then said he saw a break in traffic after "five, six seconds" and "pulled away maybe three-quarters of a turn of the wheel." *Id.* at 25:11-14. His testimony continued that the bus was moving "forward, not fast" before a passenger told him to stop, which is when Cowden noticed plaintiff's arm was caught in the bus door. *Id.* at 25:15-18. Thus, according to Cowden, the bus's speed was relatively slow during the duration of the accident.

This testimony is somewhat corroborated by two other pieces of evidence proffered by defendants. The first piece of evidence is Mr. Noyes's report, titled "Evaluation of NextBus, Inc. Automatic Vehicle Location Data Received from Fairfax CUE Bus 829 on August 31, 2012" (hereinafter "Noyes Report"). According to Mr. Noyes's report, the bus did not stop at bus stop #130, the stop at which plaintiff claims she attempted to exit the bus and her arm became trapped, but instead stopped at bus stop #131, which is consistent with Cowden's testimony on this point. *See* Noyes Decl. ¶ 6; Noyes Report at 12. The report further finds that the bus remained in the vicinity of bus stop #131 between 2:53 p.m.—when Cowden claimed plaintiff's

15

arm was initially caught in the bus door—and 3:08 p.m., well after paramedics had arrived on the scene. *See* Noyes Decl. ¶ 6; Noyes Report at 12-13. Thus, the report concludes that it "is possible that all of the position reports at this location [were] made without the bus moving" or, at most, "it is also possible that the vehicle did move a very short distance." Noyes Report at 13-14. Notably, the report cautions that the findings from the collected AVL data do not give rise to a definitive conclusion, as such, "[w]itness accounts will be needed to augment this data and make proper conclusions." *Id.* at 14.

As it happens, defendants offer such a witness account through the testimony of Jordan Dickerson, a passenger on CUE Bus #829 when the incident took place. Dickerson estimated that the bus traveled "about ten feet" while plaintiff's arm was caught in the bus door for "[b]etween eight to twelve seconds." Dickerson Tr. at 12:10-13. Dickerson also testified that prior to Cowden noticing that plaintiff's arm was caught in the bus door, Cowden had "just beg[u]n to hit the gas." *Id.* at 11:2-4. And Dickerson agreed that the bus was "moving slowly" while plaintiff's arm was caught in the bus door, testifying that the maximum speed the bus reached while plaintiff's arm was caught in the bus door was "around ten" miles per hour. *Id.* at 24:3-8.

On this record, it may be argued that Cowden neglected plaintiff's safety by failing to observe plaintiff alighting from the bus (i) to ensure that she did so safely, (ii) to ensure that she was clear of the bus door before he closed it, (iii) to ensure that neither she nor any part of her clothing was caught in the closed door, and (iv) to ensure that she was safely clear of the bus before he pulled away from the bus stop. Given the state of the current record and these possible arguments, it cannot be said that a reasonable jury would be precluded from finding that Cowden's actions constituted an "utter disregard of prudence amounting to a complete neglect"

of plaintiff's safety. *Windley*, 299 S.E.2d at 369.[7] Accordingly, defendant's motion for summary judgment on plaintiff's claim of gross negligence against Cowden must be denied.

It is worth noting that the parties have not cited a published decision that is factually on all fours with this case, and such a published decision does not appear to exist. Nor is it surprising that it is not easy to harmonize the existing cases; the combinations and permutations of possible factual scenarios is, of course, infinite and the line between negligence and gross negligence is somewhat indistinct.[8] And to be sure, this case is one that is close to the indistinct line; indeed, this is a close case. But on summary judgment, very close cases should typically be decided, as here, in favor of the nonmovant.

## VI.

In sum, because Fairfax City's operation of a municipal bus system is a governmental function entitling it to sovereign immunity, summary judgment is appropriate with respect to Fairfax City. Additionally, Cowden is entitled to immunity from claims of ordinary negligence because the operation of a municipal bus involves the exercise of discretion and judgment.

---

[7] Importantly, although the evidence suggests that the bus traveled only a short distance—ten feet—with plaintiff's arm caught in the bus door, there is still room, on this record, for the parties to dispute this issue and this is a factor the jury may consider in determining if Cowden's actions were grossly negligent.

[8] *See, e.g., Finney v. Finney*, 125 S.E.2d 191, 193-94 (Va. 1962) (Overturning jury verdict of gross negligence when defendant failed to notice a traffic signal hanging over an intersection and struck plaintiff's car because "[t]here was nothing alarming in the speed at which [defendant] was driving"); *Va. Elec. & Power Co. v. Holland*, 37 S.E.2d 40, 41 (Va. 1946) (Finding that an operator of an electric car was grossly negligent when she waved at another operator across the street and "paid no attention . . . to the traffic light at the intersection and operated her car through the red light" causing a collision with plaintiff's car"). *See also Muse*, 349 F. Supp. 2d at 1000-01 (Finding that deputy who was distracted by a conversation with a reporter and collided with plaintiff's vehicle when he ran a red light was not grossly negligent because he proceeded "only once he believed he saw the light change from red to green and . . . he was driving only '5-7 miles per hour' at the time of impact").

Finally, summary judgment in favor of Cowden on plaintiff's gross negligence claim must be denied because a reasonable jury, on this record, could find that Cowden's acts or failures to act constituted gross negligence.

An appropriate Order will issue.

Alexandria, VA
March 30, 2015

/s/
_____
T. S. Ellis, III
United States District Judge